Nicholas Kittleson
78-6920 Alii Drive, Unit 218
Kailua-Kona, Hawai'i 96740-2511
(907) 345-0830
nicholas@gci.net
Attorney for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DEBRA RENA GRACIANI<br><br>Plaintiff,<br>vs.<br><br>PROVIDENCE HEALTH & SERVICES, KELLI RINAS, JAMES EFIRD, BRENDA FRANZ and JAMES BLANKENSHIP<br><br>Defendants. | Case No.: |

## COMPLAINT & DEMAND FOR JURY TRIAL

### (42 U.S.C. §1981)

COMES NOW Plaintiff Debra Rena Graciani, by and through counsel Nicholas Kittleson, and alleges and complains as follows:

### JURISDICTION

1. This Court has jurisdiction of the matter under the doctrine of federal question: 8 U.S.C. §1332; §1334(a)(4) and FRCP 8(a)(1).

2. This Court has jurisdiction of the tort claims under Federal Supplemental Jurisdiction: 28 U.S.C. §1367.

## VENUE

3. Venue with this Court is proper under 28 U.S.C. §1391(e).

## FACTS COMMON TO ALL CLAIMS

4. Ms. Graciani is an employee of Providence Health & Services ("Providence") in Anchorage, Alaska. Ms. Graciani is a registered nurse with specialized training in dialysis. She has served as a nurse at Liberty Dialysis and serves concurrently as a dialysis nurse for the Alaska Native Tribal Health Consortium and First Care Medical Center. Ms. Graciani's race is African American.

5. Kelli Rinas was a Clinical Manager at Providence. Ms. Rinas was Ms. Graciani's direct supervisor in the dialysis department. Ms. Rinas's race is Caucasian.

6. James Efird is an Assistant Clinical Manager at Providence. Mr. Efird was Ms. Graciani's direct supervisor in the dialysis department. Mr. Efird's race is Caucasian.

7. Brenda Franz is the Director of Medical Surgical Services & Outpatient Infusion Services at Providence. Ms. Franz was Ms. Graciani's second level supervisor in the dialysis department. Ms. Franz's race is Caucasian.

8. James Blankenship is the manager of the Renal Care Unit and Dialysis. Mr. Blankenship was Ms. Graciani's direct supervisor in the dialysis department. Mr. Blankenship's race is Caucasian.

9. On or about February 17, 2014 Ms. Graciani was hired into a registry position part time position at Providence in the dialysis department. Providence is a union shop for nurses. Ms. Graciani was a dues paying member of the Alaska Nurses Association ("Union").

10. When Ms. Graciani began working for Providence, scheduling was handled by each nurse self-scheduling by writing their preferences. At that time, Tim Lorimer was the Assistant Clinical Manager at Providence's dialysis unit. Mr. Lorimer handled the scheduling fairly to accommodate all nurses' requests equally.

11. When Ms. Graciani began working for Providence, James Efird was a dialysis nurse. Shortly after Ms. Graciani began working at Providence there was a conversation in the nurses break room among the nurses, including Mr. Efird and Ms. Graciani and the other nurses working that day. During this conversation Mr. Efird told the nurses that he used to live on Reka Drive, but he had to move because he got tired of living around all the Blacks.

12. In late 2014 or early 2015 Mr. Lorimer left the dialysis unit. James Efird was promoted into his position as Assistant Clinical Manager. Mr. Efird continued the practice of allowing the nurses to self-schedule. However, when conflicts arose, Mr. Efird would give preference to the Caucasian nurses over Ms. Graciani.

13. During the period of January through May 2015, Ms. Graciani was out for a right knee injury. During this time a full time position became available. Ms. Graciani should have been offered the position but Providence, through the efforts of Kelli Rinas, tried to hire somebody else for the position. Ms. Graciani was offered the position on or about April 16, 2015 after the Union stepped in on her behalf.

14. On or about June 12, 2015, Providence's Pediatric Intensive Care Unit ("ICU") received a minor child in acute distress who needed immediate dialysis. Ms. Graciani had no experience working with patients under the age of 18. The other nurses

refused to dialyze the patient unless they received a letter stating they would not be held liable if something happened to the child. Mr. Efird ordered Ms. Graciani to perform the dialysis despite her lack of experience on patients so young. Ms. Graciani told Mr. Efird she had never administered dialysis to a child before. Mr. Efird still ordered her to do it. Ms. Graciani successfully administered the treatment and saved the child's life.

15. On or about June 12, 2015 Ms. Graciani had a conversation with Mr. Efird about the scheduling issues and how preferences were given to the Caucasian nurses and not her. She also brought up that the Caucasian nurses were allowed to leave early when they finished with their patients instead of helping the nurses that were still on staff as had been the practice. Mr. Efird still took no corrective action on these issues. Mr. Efird continued to schedule Caucasian nurses in their requested preferences, and then place Ms. Graciani in the left over spots wherever they needed coverage, ignoring Ms. Graciani's self-scheduling requests. He continued to allow the Caucasian nurses to leave early when they wanted instead of assist Ms. Graciani.

16. Later that day, on or about June 12, 2015, Kelli Rinas informed Ms. Graciani that she would need to attend a disciplinary meeting with Ms. Rinas on June 15, 2015. The basis for the discipline was stated as "hospital wide complaints" about Ms. Graciani's attitude.

17. On or about June 15, 2015, Ms. Graciani attended a disciplinary meeting against her held by Kelli Rinas, James Efird and Brenda Franz. Ms. Graciani was accompanied by her Union representative Joey Peacott. At the meeting Ms. Graciani was informed

that a number of unidentified Providence employees had commented that Ms. Graciani was "arrogant, rude, condescending and disrespectful." Ms. Graciani did not know who would be making such claims or why they would be making them. Ms. Graciani did share that she had brought up issues with the favoritism she had brought to Mr. Efird's attention on or about June 11, 2015. She still had not received an explanation for it, nor any change to the treatment that favored the Caucasian employees.

18. During the same June 15, 2015 meeting Ms. Rinas, Mr. Efird and Ms. Franz accused Ms. Graciani of causing two nurses to leave the dialysis department. Although they did not identify the nurses who left, Ms. Graciani was aware that Jay Stewart and Renee Kusner-Kalarchik had left the dialysis department. These employees had left during or shortly after Ms. Graciani took medical leave. Ms. Graciani had not worked with them in several months. Ms. Kusner-Kalarchik was a Caucasian nurse who had treated Ms. Graciani poorly when they had worked together prior to Ms. Graciani taking medical leave. She had also witnessed Ms. Kusner-Kalarchik tell another minority Fresenius Medical Care employee, Tommi (Last Name Unknown) that she was "dumb" and "stupid".

19. During the same meeting, Ms. Rinas asked Ms. Graciani what she believed hostile work environment means. Ms. Graciani replied that she believed it meant that when she bought up issues the managers retaliated against her. Ms. Graciani shared that she noticed it in both the verbal and non-verbal communications she had been receiving since.

20. During the same meeting, Ms. Rinas, Mr. Efird and Ms. Franz accused Ms. Graciani of being rude when a patient was brought to her from the ER department by two Caucasian nurses. Ms. Graciani explained that she was not rude. Ms. Graciani looked at the chart and the last vitals recorded were four hours old. Ms. Graciani was asking the Caucasian nurses who were presenting the patient for handoff whether more recent vitals had been taken. When she learned they had not, Ms. Graciani took the vitals. Mr. Peacott reviewed the chart and concurred with Ms. Graciani that it was appropriate to ask for updated vitals.

21. On or about June 24, 2015 Ms. Rinas wrote a letter of counselling to Ms. Graciani accusing her of being "disrespectful", "negative", "hostile", "bullying", "rude", "condescending" and "they do not want to work with you." The letter did not identify any of the alleged accusers. The only specific information provided was "you exhibited bullying tactics to get your way when it comes to overstaffing." Overstaffing was part of the scheduling issue that Ms. Graciani was discussing with James Efird as being unfair in terms of Ms. Graciani being sent home more often that her Caucasian coworkers. She had referred Mr. Efird to the overstaff log which showed that Ms. Graciani was being sent home more often in violation of the rotation set by the Collective Bargaining Agreement.

22. On or about June 29, 2015 , Kelli Rinas brought the counselling letter dated June 25, 2015 to Ms. Graciani while Ms. Graciani was treating patients in the dialysis unit. Ms. Rinas wanted Ms. Graciani to open the letter while she was assisting patients and

to write any rebuttal she wanted to submit to the letter by no later than 5:00pm that day.

23. On or about June 30, 2015, Ms. Graciani and Mr. Peacott met about the June 24, 2015 letter. Mr. Peacott shared that he had spoken with both Ms. Franz and Providence's Human Resources Strategic Partner Dar'Shon Tucker about the letter and the role that race was playing in how Ms. Graciani was being treated. He reported that Brenda Franz played down the race aspect and Dar'Shon Tucker avoided the topic of race discrimination.

24. On or about July 2, 2015 Ms. Graciani met with Ms. Tucker about the June 24, 2015 letter. Ms. Graciani attempted to address the problem she was facing in the way the letter characterized a professional African American doing her job and addressing issues and being characterized as rude, bullying, etc. Ms. Tucker advised Ms. Graciani to follow the chain of command in addressing the issues raised. Ms. Graciani believed she was doing that.

25. On or about July 2, 2015. Ms. Graciani submitted her rebuttal. She pointed out that there could be an ulterior motive for bringing the complaints against her based on complaints she had made about others who had spoken to Ms. Graciani in a disrespectful and degrading way .

26. On or about October 1, 2015, Ms. Graciani was working with Dyan Dyer (Native American) and Dawn Bennett (Caucasian). The three nurses were reviewing treatment orders together. Ms. Graciani notices a problem with one of the orders for a patient Ms. Bennett was going to be treating that day and suggested that Ms. Bennett

contact the doctor about it. In response, Ms. Bennett said, "You're a whoe!" twice in an angry and abusive manner to Ms. Graciani.

27. Later that day, once the patient treatments were complete, Ms. Graciani approached nurse educator Emily Anderson about how she should proceed with reporting Ms. Bennett's abusive outbursts. Ms. Anderson told Ms. Graciani that notifying the managers was the appropriate thing to do in the situation.

28. On or about October 2, 2015, Ms. Graciani contacted her direct supervisor, Kelli Rinas, about Ms. Bennett calling her a "whoe." Ms. Rinas expressed disbelief. Ms. Graciani pointed out that Dyan Dyer was sitting with them and witnessed the whole exchange. Ms. Rinas said she would look into it. Upon information and belief, Ms. Bennett did not receive any discipline. Ms. Bennett never apologized to Ms. Graciani.

29. On or about October 13, 2015, Ms. Graciani was summoned into another meeting with Ms. Rinas, Mr. Efird and Human Resources Strategic Partner Inyoung Lee. Union representative Jennifer Hazen was also present. Numerous accusations were brought against Ms. Graciani. The accusations were vague and/or false and/or rebutted by doctor's orders. For each of the incidents where specific information was verbally provided, Ms. Graciani was able to explain why she did what she did. No documentation of any of the accusations was provided.

30. On or about October 14, 2015, Mr. Peacott met with Ms. Lee to discuss the role that Ms. Graciani's race was playing with respect to the treatment she is receiving at work.

31. On or about October 20, 2015 Ms. Graciani was called into another meeting with Ms. Rinas, Ms. Lee and Mr. Efird. Union representative Jennifer Hazen was also present. Ms. Rinas claimed that she received daily emails about Ms. Graciani. Ms. Rinas did not provide any emails.

32. On or about October 25, 2015, Ms. Rinas then issued Ms. Graciani a Corrective Action document dated October 20, 2015 claiming Ms. Graciani was disrespectful and rude without providing any specifics. This was a disciplinary action First Conference (first step) in Providence's progressive discipline program. It required Ms. Graciani to complete six Self Instruction Modules (SIMs). The document threatened further disciplinary action including termination if Ms. Graciani did not change her attitude and behavior.

33. On or about October 26, 2015, Ms. Graciani submitted her response to the Corrective Action document dated October 20, 2015. She identified the disciplinary action as discriminatory and retaliatory. Ms. Graciani attempted to submit her response to Ms. Lee in Providence's human resource department. Ms. Lee refused to accept the rebuttal because it claimed that Providence was engaging in illegal discrimination and retaliation. Ms. Lee would only accept the response if Ms. Graciani removed the discrimination and retaliation claim.

34. On or about November 10, 2015 Ms. Graciani, through her Union, presented a grievance regarding the October 2015 disciplinary action. The grievance specifies that the discipline constitutes discrimination and retaliation against Ms. Graciani.

35. Issues with scheduling were becoming progressively worse for Ms. Graciani. The Caucasian employees enjoyed stable work weeks followed by consecutive days off. Ms. Graciani's work schedule was chopped up alternating between days on and days off. Furthermore, the rules regarding which nurse would be sent home when an overstaff occurred were being manipulated by Mr. Efird so the Caucasian nurses received preference even when it contravened the Union Collective Bargaining Agreement.

36. By November 20, 2015 Ms. Graciani had completed review of the assigned SIMs. The information was very helpful. In fact, it explained that the communication that Ms. Graciani was engaging in was appropriate while the communications and discipline brought against Ms. Graciani were inappropriate. Ms. Graciani kept the materials from the SIMs. But at one point she returned to her work area and found that somebody had thrown the materials into the trash.

37. On or about November 23, 2015 Mr. Peacott met with Ms. Lee in Human Resources to discuss the ongoing problem with scheduling. During this meeting Mr. Peacott learned that Ms. Graciani had been banned from orienting new nurses. Ms. Graciani had not been informed of this.

38. On or about December 4, 2015 Ms. Rinas and Ms. Franz called another meeting with Ms. Graciani. Mr. Peacott and Ms. Hazen from the Union were present. More vague and false accusations were brought against Ms. Graciani. Ms., Graciani was able to explain what happened in each of the specific incidents, or show that she was not involved in what was alleged. Ms. Rinas and Ms. Franz accused Ms. Graciani of

Graciani v. Providence et.al.            COMPLAINT - 10

Case 3:19-cv-00137-SLG    Document 1    Filed 05/15/19    Page 10 of 19

violating the overtime rules. Ms. Graciani pointed out that Mr. Efird was scheduling her for 12 hour shifts with an on-call shifts immediately following. This meant that when she was called, she would have to work a 24 hour day.

39. On or about December 10, 2015, Mr. Efird removed Ms. Graciani from a scheduled work day and gave it to Dawn Bennett. Mr. Peacott, on behalf of the union, attempted to address the issue with Ms. Tucker in Human resources. Ms. Graciani was not given the day back.

40. On or about December 15, 2015, Ms. Franz sent an email to Ms. Graciani stating that due to unspecified concerns have been raised about when Ms. Graciani is serving as charge nurse. Ms. Franz stated Ms. Graciani will not be in charge for the next 90 days while the concerns are investigated.

41. On or about December 15, 2015, Ms. Graciani was issued a Second Conference (step two) disciplinary action. This disciplinary action was again based on vague and unsupported accusations and accusations that were false.

42. On or about December 24, 2015, Ms. Graciani, through her Union representative, submitted a grievance on the December 15, 2015 disciplinary action. Again, Ms. Graciani and the Union pointed out that the campaign of escalating harassment through the unsubstantiated and false accusations constitutes discrimination and disparate treatment.

43. On or about December 25, 2015 Ms. Graciani and Ms. Bennett were working in the dialysis unit. Whenever Ms. Bennett would interact with Ms. Graciani, Ms. Bennett would start by saying "Ho! Ho! Ho! Merry Christmas Rena!" Ms. Graciani

understood that Ms. Bennett was referencing the incident that she called Ms. Graciani a "Whoe".

44. On or about December 25, 2015, Ms. Graciani sent an email to Brenda Franz about Ms. Bennett harassing her again in the dialysis unit, calling Ms. Graciani a "Whoe".

45. Following conversations with Mr. Peacott, Ms. Hazen, Ms. Franz and Ms. Lee in Human Resources, Ms. Graciani was informed in January 2016 that the issue with Ms. Bennett calling her a "Whoe" had been taken care of. Again, upon information and belief, no disciplinary action was taken against Ms. Bennett and Ms. Bennett never apologized to Ms. Graciani.

46. On or about February 15, 2016 Ms. Graciani was written up again for one claim of a patient issue with medication and three claims about her interactions with staff and communication. The medication issue was not an issue that pertained to Ms. Graciani and the three other claims were again vague accusations.

47. On or about March 7, 2016 Ms. Graciani was summoned into another meeting with Ms. Franz and Jim Blankenship, manager of the Renal Care Unit and Dialysis. Ms. Franz asked questions about two patients Ms. Graciani had seen the previous Friday. Ms. Graciani answered all the questions. Then Ms. Franz asked if Ms. Graciani ever entered orders without speaking with the doctor. Ms. Graciani replied, "never."

48. On or about April 1, 2016, Ms. Graciani received her performance appraisal. There were no problems noted with her work. But it was highly critical of her communication and referenced the disciplinary actions taken with respect to communication. It was created by Ms. Franz.

49. On or about May 2, 2016 Ms. Graciani was called into another meeting with Brenda Franz and Jim Blankenship. She was questioned about an interaction with a nurse during a dialysis taking place in the ICU. Mr. Blankenship and Ms. Graciani discussed several interactions with nurses and patients, including accusations brought by nurse Mario Saturnino.

50. On or about May 4, 2016 Mr. Blankenship issued a disciplinary action against Ms. Graciani for communication issues.

51. On or about May 8, 2016, Mario Saturnino came up behind Ms. Graciani and started rubbing her back and kissing her on the cheek. She told him to stop and let him know that was unwelcome and inappropriate behavior. Ms. Graciani filed a report with Providence about Mario Saturnino's actions.

52. On or about May 13, 2016, Ms. Graciani, through her union representative, filed a grievance regarding the May 4, 2016 disciplinary action.

53. Through the month of May, 2016, Brenda Franz conducted an investigation into Mario Saturnino's behavior. The investigation culminated in a memo issued to all Providence dialysis employees stating that hugging people without permission is not acceptable workplace behavior. Upon knowledge and belief, Mario Saturnino was not disciplined for his behavior, nor did he ever apologize to Ms. Graciani.

54. On or about June 20, 2016 Ms. Graciani filed a complaint for race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

55. On or about June 21, 2016 Ms. Graciani was called into another meeting with Ms. Franz and Mr. Blankenship. Ms. Hazen and Mr. Peacott from the Union were also

present. This meeting was for the purpose of confronting Ms. Graciani about another interaction with a patient care technician and patient.

56. The treatment in terms of Ms. Graciani's schedule was becoming even worse. She was sent home multiple times by James Efird and James Blankenship based on "Overstaff" in 2016 without any regard to the rotation required by the Collective Bargaining Agreement.

57. On or about August 25, 2016 James Blankenship began allowing Caucasian employee Kelly Whitworth, a Patient Care Technician, to set the scheduling for the dialysis department employees.

58. On or about September 1, 2016 Ms. Graciani was called into another meeting with Ms. Franz and Mr. Blankenship. Mr. Peacott and Ms. Hazen from the Union were also present. The complaint this time was that Ms. Graciani was using a hand cream that had fragrance and it violated the hospital's alleged "fragrance free policy." Ms. Graciani had not been informed that the hospital had a fragrance free policy and she was using a hand cream that had been recommended to her by another nurse and that Kelli Rinas was aware she was using. Providence did not have a fragrance free policy.

59. In early September 2016, Ms. Graciani used the hospital's website to submit an integrity report about the race discrimination and retaliation that she was facing.

60. On or about September 15, 2016 Andralene Allen began investigating the integrity report Ms. Graciani had submitted online.

Graciani v. Providence et.al.                                          COMPLAINT - 14
Case 3:19-cv-00137-SLG   Document 1   Filed 05/15/19   Page 14 of 19

61. On or about September 27, 2016, Ms. Graciani's EEOC complaint was transferred to the Alaska State Commission for Human Rights ("ASCHR") for investigation. Ms. Graciani informed the investigator about the additional unequal treatment in disciplining her despite the fact that she did nothing wrong, but failed to discipline Mario Saturnino when he did violate the hospital's "Discrimination, Harassment and Workplace Violence" policy contained in Providence's "Do the Right Thing Providence Code of Conduct" document.

62. On or about October 14, 2016, Ms. Graciani was called into another meeting with Providence employees Carrie Doyle and Erik McFerrin. Since this was another disciplinary investigation, Union employee Jennifer Hazen was also present. Ms. Doyle and Mr. McFerrin accused Ms. Graciani of failing to follow proper handoff procedures when transferring a patient back to the room from the dialysis unit. Ms. Graciani explained what she did with the transfer of the patient in terms of her attempts to contact the primary nurse.

63. On or about November 1, 2016 Ms. Graciani was terminated for allegedly failing to follow proper handoff protocols when transferring the patient back to the room. Through the investigation three other non African American dialysis nurses explained that they conduct handoff communication the same or similar to Ms. Graciani; Kathy Cummerang, David Stacey and Karyl Dyan Dyer. Ms. Dyer was never disciplined for how she handled handoff communications. Ms. Cummerang had 20 years of experience within Providence's dialysis unit. Ms. Cummerang and Mr. Stacy received non-disciplinary letters of counselling that give an explanation of what to do

when the receiving nurse cannot be reached. Both of the letters were issued after Ms. Graciani was terminated. Defendants never provided Ms. Graciani with a written explanation of their expectations. Previous disciplinary actions against Ms. Graciani taken by the defendants were also used to justify the termination decision.

64. Following grievance and arbitration, the termination was found to be in violation of the Collective Bargaining Agreement. Ms. Graciani was granted reinstatement.

65. Providence continued to resist reemploying Ms. Graciani. They would not reinstate her to the dialysis unit. Ms. Graciani is currently in the ICU unit. Providence did not restore her benefits immediately and treated her as a new hire on a 90 day probationary period. Ms. Graciani's pay is significantly less than she was earning in the dialysis department.

66. All conditions precedent to filing this action have been met. On or about June 20, 2016, Ms. Graciani filed her intake questionnaire with the Equal Employment Opportunity Commission ("EEOC"). In addition to identifying Providence Alaska Medical Center as the employing organization, this questionnaire specifically identified by name and position, Kelli Rinas (Manager), Brenda Franz (Director of Clinical Operations), James Efird (Assistant Clinical Manager) and James Blankenship (Manager). Her intake questionnaire identified "race", "color" and "retaliation" as the basis for discrimination. She signed her formal complaint with the EEOC on or about September 27, 2016 alleging the same bases of discrimination. The defendants submitted their response to the EEOC charge on or about December 12, 2016. The response specifically identified Providence Alaska Medical Center,

and named manager Kelli Rinas, Jim Blankenship, Brenda Franz. However, the response omitted James Efird, and instead listed Clinical Manager Eirick McFerrin. The EEOC issued the right to sue letter on December 28, 2017. Ms. Graciani filed her claims in Federal District Court on March 23, 2018.

## CLAIM I

### VIOLATION OF 42 U.S.C. §1981 – EQUAL RIGHTS

67. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

68. The defendant Providence, acting through its agents, and the individual defendants Kelli Rinas, James Efird, Brenda Franz and James Blankenship acted to deprive Ms. Graciani of equal rights under the law on account of her race and protected activity by:

a. engaging in an ongoing campaign of destructive behavior to Ms. Graciani's career by issuing a string of vague, unsupported, false and misleading disciplinary actions against Ms. Graciani. Nurses not of African American race were not disciplined for comparable and more egregious actions;

b. arranging scheduling practices to favor Caucasian employees in the dialysis unit to the detriment of the African American employee;

c. terminating an African American employee for an alleged policy violation that the other nurses of all other represented races use as common practice and were not terminated;

d. failing to employ any African American employees in the dialysis unit;

e. retaliating against Ms. Graciani for advocating for equal treatment to her Non-African American coworkers and bringing to light the discrimination and retaliation she was facing as a result.

## CLAIM VI

## PUNITIVE DAMAGES

69. Each of the preceding paragraphs is re-alleged in its entirety as if fully restated here.

70. The defendants, acting in their individual capacities and as agents of Providence, acted maliciously against Ms. Graciani and/or in conscious disregard of her rights.

## DEMAND FOR TRIAL BY JURY

Ms. Graciani requests a jury trial on all issues so triable.

## REQUEST FOR RELIEF

Ms. Graciani requests the following relief:

A. For an injunction prohibiting further discrimination, retaliation and injury to Ms. Graciani's civil rights.

B. Equitable relief in the form of expungement of negative employment history generated by the defendants in furtherance of the violations of Ms. Graciani's rights and reinstatement to the dialysis unit.

B. For an award of economic damages in an amount to be proven at trial.

C. For an award of compensatory damages in an amount to be proven at trial.

D. For an award of punitive damages in an amount to be proven at trial.

E. For a final judgment in favor of Ms. Graciani which (i) declares her the prevailing party on each of her claims, (ii) grants her leave to move for the maximum amount of attorney's fees and costs available under the law, and (iii) grants her the maximum amount of pre-judgment and post-judgment interest allowable by law; and

F. For a final judgment that provides Ms. Graciani with any other relief as may be just and proper under the circumstances.

Respectfully submitted this 15th day of May, 2019.

/s/ Nicholas Kittleson
Nicholas Kittleson
ABA # 9711090
Counsel for the plaintiff
78-6920 Alii Drive, Unit 218
Kailua-Kona, Hawai'i 96740-2511
(907) 345-0830
nicholas@gci.net
